UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN -7 P 3: 16

U.S. DISTRICT COURT
DISTRICT OF MASS.

DR. THOMAS J. WYLY

Plaintiff,

v.

THE INTERNATIONAL
FOUNDATION FOR EDUCATION
AND SELF-HELP and THE LEON H.
SULLIVAN FOUNDATION,

Defendants.

Case No. 04-11151 EFH

## BRIEF IN SUPPORT OF THE LEON H. SULLIVAN FOUNDATION'S MOTION TO DISMISS

The Leon H. Sullivan Foundation ("LHS Foundation") is a nonprofit corporation, located and incorporated in the District of Columbia. It has virtually no contact with the State of Massachusetts. Moreover, with regard to Plaintiff's allegations specifically, the LHS Foundation has never employed, contracted with, or received the benefit of services from the Plaintiff, either within Massachusetts or in any other place. Indeed, the program for which Plaintiff purportedly provided services had no connection to the LHS Foundation until August 1, 2003, two months after Plaintiff alleges he last provided services to the program. Because the LHS Foundation lacks contact with Massachusetts, both generally and in relation to Plaintiff's claims, this Court lacks personal jurisdiction over this Defendant. Moreover, because Plaintiff's claim under Mass. Gen. Laws chapter 93A is nothing more than a restatement of his breach of contract claim, it should be dismissed for failure to state a claim. Accordingly, this Motion to Dismiss should be granted and Plaintiff's claims against the LHS Foundation should be dismissed without prejudice. In the alternative, Plaintiff's claim under chapter 93A should be dismissed.

I.  **FACTUAL BACKGROUND**

   A.  **The LHS Foundation**

The LHS Foundation was established to honor the life and legacy of the Reverend Leon H. Sullivan, a civil rights pioneer and international humanitarian, and also to promote the principles of self-help in order to empower underprivileged peoples and advocate social responsibility worldwide. (Declaration of Hope Sullivan ("Sullivan Decl.") ¶ 3.) It is a non-profit corporation, incorporated under the laws of the District of Columbia on June 5, 2002. (Id. ¶ 4.) Its headquarters are located in the District of Columbia. (Id.)

   B.  **The LHS Foundation Has Little Contact with Massachusetts**

The LHS Foundation has little contact with the Commonwealth of Massachusetts. It has no office, address, property, inventory, assets, bank accounts, or registered agent in Massachusetts, and it is not listed in any telephone or business directory in the state. (Id. ¶¶ 6, 7, 12, 15, 16, 17.) It is not registered to transact business, nor has it consented to be sued, in Massachusetts. (Id. ¶ 9, 10.) The LHS Foundation has not designated an agent for service of process in Massachusetts and it does not have a registered agent in the state. (Id. ¶¶ 8, 11.)

The LHS Foundation does not have any employees or agents who reside in Massachusetts, nor has it engaged any independent contractors to work in the state. (Id. ¶¶ 13, 18.) It has not paid, nor has it ever been required to pay, unemployment taxes or any other taxes in Massachusetts. (Id. ¶ 19.) Neither directors, officers, nor employees of the LHS Foundation have traveled to Massachusetts to conduct the business of the LHS Foundation. (Id. ¶ 14.) The LHS Foundation has never held any fund-raising or any other kind of event in Massachusetts. (Id. 20.) The LHS Foundation has never received a financial donation from any resident of Massachusetts. (Id. ¶ 23.)

2

The sole contact that the LHS Foundation has had with anyone in Massachusetts was a single mailing to a few residents of the Commonwealth. In the Spring 2003, the LHS Foundation sent a piece of direct mail solicitation to individuals whose names have become known to the LHS Foundation. (Id. ¶ 21.) The mail solicitation was an invitation to an annual event held by the LHS Foundation outside of Massachusetts. (Id.) Of the approximately 4,800 people on the mailing list, only 43 individuals resided in Massachusetts and were sent this invitation. (Id.) These 43 individuals comprised less than 1% of the individuals on the mailing list. (Id.) This single mailing is the only contact between the LHS Foundation and Massachusetts, and it has nothing to do with Plaintiff's claims in this action.

C.   **Plaintiff's Claims**

Plaintiff's allegations arise out of services he claims to have performed for the Global Sullivan Principles Program (the "GSP Program") from the beginning of 2002 until June 2003. (See Compl. ¶¶ 8, 11, 19, 20, 21.) According to Plaintiff, in 2001, the GSP Program was operated by co-Defendant International Foundation for Education and Self-Help ("IFESH"), which Plaintiff alleges hired him as a consultant, first, to assess the feasibility of extending the GSP Program into higher education, and then, to assume overall responsibility in leading the GSP Program as it related to higher education. (Id. ¶¶ 6, 7.) The allegations in the Complaint assert that Plaintiff had an agreement with IFESH to perform services and that he performed services for IFESH.[1] Indeed, the factual allegations lead to the conclusion that any purported agreement by Plaintiff was with IFESH only – not the LHS Foundation. According to Plaintiff:

- IFESH hired Plaintiff in 2001 to run the GSP Program for higher education, (id. ¶¶ 7, 8, 23, 34);

---

[1] Plaintiff does allege that Sullivan Foundation officials represented that he would be compensated for his services, but he does not allege which entity would be responsible for such compensation. (Id. ¶ 20.)

3

- Reverend Sullivan directed IFESH's chief financial officer/controller to develop a budget for the GSP Program with regard to higher education, (id. ¶ 9);

- IFESH provided Plaintiff with a copy of this budget, which indicated Plaintiff's compensation rate (id.);

- After Reverend Sullivan's death, IFESH needed time to "get its act together," (id. ¶ 10);

- Dr. Wright, the President and CEO of IFESH, acknowledged a debt to Plaintiff and indicated that "IFESH and its Board Chair, Dr. Andrew F. Brimmer, were committed to satisfying this debt," (id. ¶ 16);

- Grace Sullivan appeared at an IFESH board meeting to demand payment to Plaintiff, (id. ¶ 17); and

- An apology was made to Plaintiff for the "cavalier attitude" of IFESH regarding Plaintiff's compensation, (id. ¶ 18).

In short, Plaintiff's dealings, by his own factual allegations, were with IFESH. The LHS Foundation, however, is a separate entity from IFESH and is not responsible for the actions of IFESH. (Sullivan Decl. ¶¶ 24, 25.) Although the LHS Foundation provides some financial support to IFESH, the two corporations issue separate financial statements and file separate tax returns. (Id. ¶ 27.) They are incorporated separately and they operate separately with different administrative offices and staff. (Id. ¶¶ 25, 26.) Furthermore, the two corporations do not share any officers or directors. (Id. ¶ 26.)

Although Plaintiff does not make any factual allegations to support his claims against the LHS Foundation, Plaintiff does make the conclusory allegation that he provided services to the LHS Foundation. (See id. ¶¶ 20, 32, 35, 38). This allegation appears to be dependent upon Plaintiff's assertion, made upon "information and belief," that the LHS Foundation "became responsible" for the GSP Program in May 2002. (See id. ¶ 25.)

The Declaration of Hope Sullivan, however, belies that unfounded allegation, for Ms. Sullivan declares unequivocally that any relationship between the LHS Foundation and the GSP

4

Program for which Plaintiff purportedly worked did not begin until August 1, 2003. (Sullivan Decl. ¶ 29.) Prior to that time, the LHS Foundation did not provide direct financial assistance to the GSP Program, nor did it operate or manage any aspect of the GSP Program. (Id.) Thus, Plaintiff was never an employee or an agent of the LHS Foundation. (Id. ¶¶ 28, 30-32.) The LHS Foundation never entered into a contract for services with Plaintiff nor has the LHS Foundation promised to pay him for any services. (Id. ¶ 30.) Moreover, the LHS Foundation has never directed that Plaintiff perform work for the LHS Foundation, nor has Plaintiff ever performed services that have benefited the LHS Foundation. (Id. ¶¶ 31, 32.)

In his Complaint, Plaintiff attempted to assert four breach-of-contract type claims: breach of contract, promissory estoppel, breach of implied covenant of good faith and fair dealing, and unjust enrichment/quantum meruit. Further, Plaintiff has alleged a violation of Mass. Gen. L. chapter 93A for allegedly unfair and deceptive acts.

## II. LEGAL ARGUMENT AND CITATION OF AUTHORITIES

Plaintiff's claims should be dismissed in their entirety because this Court lacks personal jurisdiction over the LHS Foundation. Alternatively, Plaintiff's claim under Mass. Gen. L. chapter 93A should be dismissed because it fails to state a claim. Each of these arguments is addressed in turn.

### A. This Court Lacks Personal Jurisdiction Over the LHS Foundation.

#### 1. Plaintiff Bears the Burden of Demonstrating Specific Facts Establishing that this Court Has Jurisdiction Over the LHS Foundation.

Plaintiff bears the burden of proving that this Court has authority to subject the LHS Foundation, a non-resident defendant, to its jurisdiction. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). The quantum of proof required to establish jurisdiction must go beyond "allegations in a lawyer's brief or legal memorandum," and must include competent evidence of

specific facts. Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001). Plaintiff must demonstrate that: (1) the Massachusetts long-arm statute confers jurisdiction over the LHS Foundation; and (2) the exercise of jurisdiction over the LHS Foundation comports with Constitutional Due Process. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995). Because Massachusetts' long arm statute extends jurisdiction to the maximum limit consistent with due process, it is only necessary to evaluate whether the requirements of due process would be satisfied by the exercise of jurisdiction. See Daynard v. Ness, Motely, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002); Moldflow Corp. v. Simcon, Inc., 296 F. Supp. 2d 34, 39 (D. Mass. 2003) (Lindsay, J.). In this case, the exercise of jurisdiction by this Court over the LHS Foundation would violate constitutional due process because, as set forth in the Declaration of Hope Sullivan, the LHS Foundation does not have minimum contacts with Massachusetts.

### 2. The Legal Standard for Asserting Personal Jurisdiction Over a Nonresident Defendant.

Due process requires sufficient "minimum contacts" between a defendant and the forum state so that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92, 100 S. Ct. 559 (1980). A defendant's contacts must be more than "random, fortuitous, or attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985). Indeed, in order for personal jurisdiction to be appropriately exercised, a defendant must "purposefully avail" itself "of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228 (1958).

A court may exercise either specific or general jurisdiction over a defendant. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868 (1984);

6

Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990). Specific jurisdiction exists where the plaintiff's claim arises out of the defendant's contacts with the forum state. Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414, 104 S. Ct. 1868. General jurisdiction permits a court to subject a non-resident defendant to a lawsuit in the forum involving claims that are wholly unrelated to any contact it has with the forum state. See id. at 414-15, 104 S. Ct. 1868. Plaintiff cannot satisfy either of these standards.

### 3. The Exercise of Specific Personal Jurisdiction is not Appropriate.

A three part test must be satisfied before specific jurisdiction can be exercised:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The "Gestalt" factors are the five relevant criteria identified by the Supreme Court to analyze whether the exercise of jurisdiction is fair and reasonable: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. Id. at 1088 (citing Burger King, 471 U.S. at 477, 105 S. Ct. at 2184). In this case, neither of the first two elements of the First Circuit's test are satisfied, and the balance of the "Gestalt" factors suggests that the exercise of jurisdiction of the LHS Foundation is not fair or reasonable.

7

### a. The "Relatedness" Prong is Not Satisfied.

First, the relatedness prong is not satisfied because Plaintiff's claims do not arise from the sole contact between the LHS Foundation and Massachusetts: the mailing of the invitation to 43 Massachusetts residents in the Spring 2003. Rather, Plaintiff's claims are contract claims for nonpayment for services purportedly provided by Plaintiff.

Second, given Plaintiff's contract claims, the relatedness prong is satisfied only if the defendant's forum-based activities are "instrumental in the formation of the contract." Id. (quoting Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983)) (internal quotation marks omitted). "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). Here, there simply is no contract, agreement, or promise between Plaintiff and the LHS Foundation. (See Sullivan Decl. ¶¶ 28, 30, 31.) As alleged in the Complaint, any negotiations with Plaintiff regarding the GSP Program purportedly occurred between Plaintiff and IFESH – not the LHS Foundation. (See Compl. ¶¶ 7, 8, 16, 23, 34.) The LHS Foundation is not aware of the location of those negotiations, but it is certain that the LHS Foundation did not participate in them – Plaintiff was purportedly hired by IFESH before the LHS Foundation had even been established. Moreover, the LHS Foundation did not have any relationship with the GSP Program until August 1, 2003 (Sullivan Decl. ¶ 29), which is after Plaintiff claims to have stopped working for the GSP Program in June 2003 (Compl. ¶¶ 19, 20). In short, because the LHS Foundation never employed or worked with Plaintiff, Plaintiff's claims based upon services he purportedly performed are unrelated to the LHS Foundation. Cf. United Elec. Radio & Mach. Workers of Am., 960 F.2d at 1090 (finding no specific jurisdiction for a contract claim because, in part, the defendant "was not a party to the contract").

### b. The LHS Foundation Has Not Purposefully Availed Itself of the Benefits and Protections of Massachusetts Law.

The function of the purposeful availment requirement is to assure that personal jurisdiction is "not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle, 70 F.3d at 1391. "The cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Id.

The LHS Foundation has not purposefully availed itself of Massachusetts law because the LHS Foundation never contracted with Plaintiff or initiated any contact with Plaintiff. Indeed, the LHS Foundation appears to have been named as a Defendant based solely upon its involvement with the GSP Program. As stated above, however, this involvement began after Plaintiff alleges to have ended his purported service to the GSP Program. Thus, even if the LHS Foundation were responsible for the obligations of the GSP Program (which it denies), such responsibility after the fact would not mean that the LHS Foundation voluntarily submitted itself to Massachusetts jurisdiction for actions that came before. Nor would it have been foreseeable in August 2003 that the LHS Foundation could be haled into a Massachusetts court based upon actions of others that allegedly occurred before the LHS Foundation became involved with the GSP Program.

### c. Exercising Jurisdiction Over the LHS Foundation Would not be Reasonable.

As an initial matter, it should be emphasized that the "Gestalt" factors to determine the "reasonableness" of jurisdiction do not need to be addressed unless Plaintiff is able to demonstrate sufficient minimum contacts with the forum state, which, as set forth above, Plaintiff is unlikely to accomplish. See Sawtelle, 70 F.3d at 1394 ("The [g]estalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." (quoting United Elec. Radio & Mach. Workers of Am., 960 F.2d at 1091 n.11) (internal

9

quotation marks omitted)). Even if the factors are considered, this stage of the analysis "evokes a sliding scale": "[T]he weaker the plaintiff's showings on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Id. (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)) (internal quotation marks omitted).

In this case, the five "Gestalt" factors, taken in their entirety, do not support the exercise of personal jurisdiction. Three factors clearly do not favor jurisdiction. First, the burden on the LHS Foundation of appearing in Massachusetts is great. The LHS Foundation is a nonprofit entity that has no presence in the state. All of the witnesses for the LHS Foundation are either in Washington D.C. or Atlanta, Georgia, where some members of its Board of Directors reside.

Second, Massachusetts does not have an interest in this litigation. In a contract case such as this, where the law of Massachusetts likely will not govern, the Commonwealth only has "a generalized interest in providing a convenient courthouse in which to resolve disputes." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 184 F. Supp. 2d 55, 68 (D. Mass. 2001) (Young, C.J.), rev'd on other grounds, 290 F.3d 42 (1st Cir. 2002). Moreover, it is the understanding of the LHS Foundation that most, if not all, of any activities Plaintiff performed for IFESH took place outside of Massachusetts.[2]

---

[2] Although it is not set forth in the Complaint, Plaintiff had a contract for services with IFESH that terminated, under its own terms, at the end of 2001. Plaintiff has not made any claim that he was not paid for services rendered pursuant to that contract. Rather, Plaintiff appears to be alleging that he continued to perform services for IFESH after the termination of that contract, for which he was not paid. It is the understanding of the LHS Foundation that, although Plaintiff happened to reside in Massachusetts, he performed services under this contract primarily outside of Massachusetts.

Third, the efficient administration of justice requires the Court to decline jurisdiction. Every defense witness is located outside of Massachusetts. Indeed, because Plaintiff's purported services occurred outside of Massachusetts, it is likely that every witness for Plaintiff, other than Plaintiff himself, will be located outside of the Commonwealth. Moreover, most, if not all, of the relevant documents are located outside of Massachusetts. Jurisdiction in Massachusetts will not serve the efficient administration of justice.[3]

Ultimately, the question that must be answered is whether the maintenance of this lawsuit would offend "traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316, 66 S. Ct. 154 (1945). In this case, because the contacts between the LHS Foundation and Massachusetts related to Plaintiff are nonexistent, or, at best, impermissibly weak, and the majority of the Gestalt factors do not favor jurisdiction, it would be unreasonable and a violation of our understanding of fair play and substantial justice for a Massachusetts court to assert specific jurisdiction over the LHS Foundation based upon Plaintiff's claims.

### 4. The LHS Foundation is Not Subject to General Personal Jurisdiction.

A judicial inquiry into general jurisdiction has two stages. Donatelli, 893 F.2d at 465. First, the court must examine the defendant's contacts with the forum to ensure that they exist in "sufficient abundance" to comply with due process. Id. If such minimum contacts are lacking, personal jurisdiction cannot be exercised. Id. Only if the contacts are sufficient does a court

---

[3] The remaining two factors appear to favor jurisdiction in almost every case. The plaintiff's interest in convenient relief seems to consistently support the exercise of jurisdiction by the forum state because "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." See Sawtelle, 70 F.3d at 1395. Furthermore, of the pertinent policy arguments available, "the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Id.

then examine the "Gestalt factors" of whether the exercise of personal jurisdiction would "comport with traditional notions of fair play and substantial justice." Id. The standard for general jurisdiction "is considerably more stringent" than for specific jurisdiction. Id. at 463 (quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)) (internal quotation marks omitted).

When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if its contacts with the state are "continuous and systematic." Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414, 104 S. Ct. 1868. A corporation's "single or isolated items of activities in a state . . . are not enough to subject it to suit on causes of action unconnected with the activities there." Int'l Shoe Co., 326 U.S. at 317, 66 S. Ct. at 159.

As detailed in Ms. Sullivan's Declaration, the LHS Foundation has little contact with the Commonwealth of Massachusetts. (See Sullivan Decl., ¶¶ 6-23.) The LHS Foundation has no presence in Massachusetts: there are no offices, personnel, property, inventory, or bank accounts in the Commonwealth. (Id. ¶¶ 6, 8, 13, 15-18.) No Massachusetts resident has donated money to the LHS Foundation. (Id. ¶ 23.) Indeed, the sole interaction the LHS Foundation has had with Massachusetts or its residents is a single piece of direct mail marketing that went to less than 50 people. (See id. ¶ 21.) This isolated contact does not satisfy the stringent standard required to subject the LHS Foundation to general jurisdiction within Massachusetts. Cf. Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 416, 104 S. Ct. 1873 (finding no general jurisdiction where defendant sent CEO to state for contract negotiation session, sent personnel to state for training, and purchased equipment and services from corporation in state); Moldflow Corp. v. Simcon, Inc., 296 F. Supp. 2d 34, 39 (D. Mass. 2003) (Lindsay, J.) (finding no general jurisdiction based upon one-time marketing effort of sending promotional flyers to 11

Massachusetts companies and sales to two companies); Noonan v. Colour Library Books, Ltd., 947 F. Supp. 564, 571 (D. Mass. 1996) (Stearns, J.) (no general jurisdiction where defendant sold over $52,000 in products in forum state: "a $52,000 sale of books (or even a $500,000 sale), whether measured by a qualitative or quantitative test, is simply insufficient to establish general jurisdiction"). Thus, because the LHS Foundation lacks sufficient minimum contacts with Massachusetts, the Court should not exercise general jurisdiction.

For the reasons set forth in the specific jurisdiction section of this Brief, the "Gestalt" factors also do not favor general jurisdiction.

### 5. The Contacts of IFESH with Plaintiff Should Not be Imputed to the LHS Foundation.

Finally, Plaintiff may assert that the contacts of IFESH with Massachusetts and with Plaintiff should be imputed to the LHS Foundation in order to assert jurisdiction over the LHS Foundation. This assertion must fail, however, because there is no relationship between IFESH and the LHS Foundation such that the LHS Foundation is responsible for the actions of IFESH. Particularly with regard to the GSP Program, IFESH and the LHS Foundation are not partners, joint venturers, or in an agency relationship. Although the LHS Foundation does contribute some funds to IFESH generally, the two organizations are incorporated separately, have separate headquarters and administrative staff, and have distinct directors and officers. (Sullivan Decl. ¶¶ 24-26.) Moreover, the two corporations issue separate financial statements and file separate tax returns. (Id. ¶ 27.) In short, assertion of jurisdiction over the LHS Foundation based upon the actions of IFESH would not satisfy the Due Process Clause. See generally Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52-60 (1st Cir. 2002) (discussing the exercise of personal jurisdiction based upon imputed contacts).

13

**B.     Plaintiff's Claim Under Mass. Gen. L. 93A Fails Because it is Nothing More Than a Contract-Based Claim.**

In accordance with Fed. R. Civ. P. 12(b)(6), the LHS Foundation also moves for dismissal of Plaintiff's claim under Mass. Gen. L. 93A, because it fails to state a claim upon which relief can be granted. As set forth below, the allegations in support of this claim are the same as Plaintiff's breach of contract claims, and such allegations are not sufficient to support a violation of chapter 93A. See, e.g., Callahan v. Harvest Bd. Int'l, Inc., 138 F. Supp. 2d 147, 166 (D. Mass. 2001) (Saris, J.).

Plaintiff's claims are all based upon his allegation that he performed services for Defendants for which he was not paid. Four of his claims allege various contract-based theories of recovery for this allegation: breach of contract, promissory estoppel, breach of implied covenant of good faith and fair dealing, and unjust enrichment/quantum meruit. Plaintiff's final claim, however, is alleged under Mass. Gen. L. 93A, based upon the allegation that Defendants' refusal to pay him for his purported services "constitute[s] an unfair or deceptive act." (Compl. ¶ 44.) This claim should be dismissed because it is an attempt to convert a breach of contract claim into a tort claim, which is not permitted under Massachusetts law.

A breach of contract, without more, does not violate chapter 93A. See Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 115 (1st Cir. 1997) ("[A] breach-of-contract claim, without more, cannot be converted into a tort claim."); Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985); Callahan, 138 F. Supp. 2d at 166. Similarly, a mere non-payment of debt does not normally constitute a chapter 93A violation. Callahan, 138 F. Supp. 2d at 166 (citing Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513-14 (1st Cir. 1989)). In fact, a breach of contract claim is actionable as a 93A violation only if it has an "extortionate quality that gives it the rancid flavor of unfairness." Id. (quoting Atkinson

14

v. Rosenthal, 33 Mass. App. Ct. 219, 226, 598 N.E.2d 666, 670 (1992)) (internal quotation marks omitted). Thus, no Chapter 93A liability exists "[w]here there is a good faith dispute over whether payment is actually owed, and that dispute is clearly articulated." Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 56 (1st Cir. 1998).

In this case, Plaintiff has alleged nothing more than a breach of contract for services. Moreover, a good faith dispute exists regarding whether the LHS Foundation had any contract with Plaintiff to perform any services. Under Plaintiff's own allegations, any agreement he made was with IFESH – not the LHS Foundation. As set forth in the Declaration of Hope Sullivan, the program for which Plaintiff worked – the GSP Program – did not have any relationship with the LHS Foundation until well after Plaintiff alleges he stopped working for the GSP Program. (Sullivan Decl. ¶ 29; Compl. ¶¶ 19, 20.) Furthermore, Plaintiff has not claimed any injury apart from that caused by the alleged breach of contract, and thus has failed to demonstrate a "loss of money or property" as required by chapter 93A. See Callahan, 138 F. Supp. 2d at 167.

For all of these reasons, Plaintiff has failed to state a claim under Mass. Gen. Laws ch. 93A, and this claim should be dismissed.

III. **CONCLUSION**

The LHS Foundation has had no contact with Massachusetts related to Plaintiff's claims; thus, there is no specific jurisdiction. Furthermore, its sole contact with the Commonwealth was one piece of direct mail sent to a small number of recipients, which is clearly insufficient for the Court to assert general jurisdiction. Accordingly, Plaintiff's claims against the LHS Foundation should be dismissed without prejudice for lack of personal jurisdiction. Alternatively, if personal jurisdiction is found, the Court should dismiss Count Five of Plaintiff's Complaint, because it improperly attempts to convert a breach of contract claim into a tort under Mass. Gen. Laws chapter 93A. Therefore, Count Five fails to state a claim upon which relief can be granted.

Respectfully submitted, this 7 day of June, 2004.

THE LEON H. SULLIVAN FOUNDATION

By its attorneys:

_____
Michael Rosen, Esq.  BBO# 559954
Elizabeth Heinrich, Esq.  BBO #648090
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

OF COUNSEL:
R. Daniel Beale
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
(404) 527-8489

Attorneys for Defendant The Leon H. Sullivan Foundation

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2004, I served a copy of the foregoing by mail / hand / email / Federal Express to counsel for Plaintiff, David A. Browne, Sherin and Lodgen, LLP, 100 Summer Street, Boston, MA  02110 and counsel for the International Foundation for Education and Self Help, Marie F. Mercier, Kotin Crabree & Strong, LLP, One Bowdoin Square, Boston, MA, 02114.

_____
Elizabeth Heinrich